OPINION
{¶ 1} Plaintiffs-appellants David and Kathleen Cronin appeal from the October 12, 2005, Judgment Entry of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On or about May 30, 2003, appellants David and Kathleen Cronin and appellee Judith Clegg entered into a purchase agreement. Pursuant to the terms of the agreement, appellee agreed to purchase a vacant lot from appellants for the purchase price of $47,000.00. The purchase agreement granted appellee twenty (20) days to consult with a builder to determine whether the property was suitable for building. Appellee put down an earnest money deposit in the amount of $1,000.00 on the property.
 {¶ 3} Subsequently, on August 10, 2004, appellants filed a complaint against appellee. Appellants, in their complaint, alleged that while they had performed their obligations under the purchase agreement, appellee had not "performed her promise and has refused to tender the balance due of Forty-six Thousand Dollars ($46,000.00) to complete the sale of the real property." Appellants sought a judgment against appellee in such amount plus interest and costs.
 {¶ 4} On August 27, 2004, appellee filed an answer and counterclaim. Appellee, in her counterclaim, alleged, in part, that appellants had committed fraud since they knew and failed to disclose to appellee that the subsurface soil conditions of the lot rendered the property unbuildable.
 {¶ 5} After the trial court denied both parties' motions for summary judgment, a trial before a Magistrate commenced on April 22, 2005. The following testimony was adduced at trial.[1]
 {¶ 6} At trial, appellee testified that she did not have the soil tested within the twenty (20) day period provided for in the purchase agreement since she "had no inclination that there was any reason for me to need to have it done." Transcript at 23. On the morning of July 9, 2003, the date of the scheduled closing, appellee met with Hershberger, a builder, who indicated to appellee that there were problems with the soil and that, for such reason, she should not close on the lot until a soil test was conducted. Appellee, therefore, did not appear for the scheduled closing that afternoon.
 {¶ 7} After having a soil test completed at a cost of $500.00, appellee was advised that the soil needed approximately $9,000.00 worth of remediation to make the lot buildable. Appellee testified that she made an offer to appellant David Cronin "that if he would help defray some of those additional expenses since the cost of the lot had just gone up $9,000 that I was still willing to buy the lot." Transcript at 31. According to appellee, appellants were unwilling to come down $9,000.00 on the purchase price. The following is an excerpt of appellee's trial testimony:
 {¶ 8} "A. Okay. I asked my realtor to contact his realtor and offer to continue to purchase the lot if he would come down the $9,000.
 {¶ 9} "Q. Okay.
 {¶ 10} "A. The answer that I got from my realtor was no. At that time if there had been some leeway, I probably would still have gone through with it because I still wanted the lot at that point.
 {¶ 11} Q. So it would have been your opinion at that time the fair market value of the lot now with knowledge of the soil problems was $39,000 dollar — I'm sorry — $38,000 rather than 47,000, is that correct?
 {¶ 12} "A. Correct." Transcript at 32.
 {¶ 13} Testimony was adduced at trial that appellants, in May of 2002, previously had contracted to purchase the lot from Kauth Custom Builders for the purchase price of $40,500.00 on a land contract basis. Appellants made an $8,000.00 down payment on the lot to obtain the land contract.
 {¶ 14} Donna Mills, appellants' realtor, testified at trial that of the $47,000.00 that appellee agreed to pay appellants for such property, she was to receive a commission in the amount of $3,200.00. Mills testified that after appellee's soil test came back, she was sent a request by appellee's realtor to release the $1,000.00 earnest money deposit. The following testimony was adduced when Mills was asked whether she was able to continue listing the property for $47,000.00 after the sale to appellee fell through:
 {¶ 15} "A. Well, no, not without — we would have had to, ethically, legally we would have had to have the soil tested on our own so that we were responsible for the results.
 {¶ 16} "Q. Okay.
 {¶ 17} "A. Then depending upon what the analysis was, that would affect the sale price because now the vacant land disclosure would have to be filled out with that information included.
 {¶ 18} "Q. If there were testimony that it would have cost $9,000 to build on that property in order to overcome the soil problems, what impact would that $9,000 price tag have had on the fair market value of the real estate?
 {¶ 19} "A. It would drop the value of it by $9,000.
 {¶ 20} "Q. Okay.
 {¶ 21} "A. That figure had been established, I am assuming you are saying that.
 {¶ 22} "Q. Yeah, assume that there is testimony to that.
 {¶ 23} "A. Okay. If that is the figure that is there, then that is an established figure.
 {¶ 24} "Q. Were you paid for your services in this?
 {¶ 25} "A. No.
 {¶ 26} "Q. Are you still owed $3200?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. Do you expect those sums to be paid at some point?
 {¶ 29} "A. Yes, I do." Transcript at 54-55.
 {¶ 30} At trial, Kathleen Rainieri, an employee of American Title, testified that her office was prepared for the closing on the subject property on July 9, 2003, but that appellee did not appear for the same. Rainieri testified that after appellants' underlying land contract with Kauth, the real estate commission and closing expenses were paid off, appellants were to receive the balance, which was $9,850.23. Ranieri further testified that she called after the closing to see if appellee was running late and was told that that appellee was going to have a soil test conducted.
 {¶ 31} Appellant David Cronin testified at trial that he believed that appellants were going to receive a check in the amount of $9,850.23 at the conclusion of the closing. Appellant David Cronin further testified that such money was not profit, but rather their down payment on the land contract and what appellants had spent on the property in cutting the grass. According to appellant, appellants were just breaking even. When asked, appellant David Cronin testified that he believed that he still owed Donna Mills, appellant's realtor, $3,200.00 as a commission. The following testimony was adduced when appellant David Cronin was asked whether appellants continued to advertise the property:
 {¶ 32} "A. Well, we had — we had issues.
 {¶ 33} "Q. Just yes or no, did you continue to advertise it?
 {¶ 34} "A. For a short period, yes.
 {¶ 35} "Q. Until when?
 {¶ 36} "A. I don't know the exact date.
 {¶ 37} "Q. Do you recall Donna Mills' testimony saying that she wasn't permitted to advertise it?
 {¶ 38} "A. No, it wasn't a matter of being permitted. It was a matter that we had issues with the financial side of it from the standpoint of now I needed to go out and get a soil test done because I didn't have a copy of her soil test to know what was really wrong with it so I can't fill out this form to show what's really wrong with it to advise the next person that is interested. I didn't have the money to go do a soil test. So we had an issue. So I had to pull it off.
 {¶ 39} "Q. So you pulled it off, and it hadn't been back on since?
 {¶ 40} "A. No." Transcript at 191-192.
 {¶ 41} Appellant David Cronin further testified that if the subject property had been sold for $9,000.00 less than the $47,000.00 asking price, he would not have been in the same position that he would have been in if appellee had completed the purchase of the property. According to appellant David Cronin, "we would have lost $9,000.00." Transcript at 197.
 {¶ 42} Ron Duplain, a developer and builder who lives near the subject lot, testified at trial that he estimated that it would cost a minimum of $10,000.00 to put in a piling foundation, although he believed that it would be more expensive than that. When asked whether the price could "go as high as 40," Duplain testified "[t]hat would be a sheer guess on my part, . . ." Transcript at 209.
 {¶ 43} The Magistrate, in a decision filed on May 13, 2005, concluded that appellee had breached the purchase agreement by failing to complete the purchase of the lot and that, as a result of such breach, appellants "were damaged by the loss of the net proceeds that they were to receive at closing: $9,850.23." The Magistrate further concluded that appellants were contractually obligated to pay their realtor $3,200.00 and that appellants were damaged in that they remained obligated to their realtor for such amount. However, the Magistrate concluded that appellants had failed to mitigate their damages since the lot had not been advertised for sale since the soil was tested. For such reason, the Magistrate concluded that she could not calculate damages and that appellants' complaint failed in the essential elements of a breach of contract.
 {¶ 44} Appellants filed objections to the Magistrate's Decision. Pursuant to a Judgment Entry filed on October 12, 2005, the trial court overruled appellants' objections and adopted the Magistrate's Decision.
 {¶ 45} Appellants now raise the following assignment of error on appeal:
 {¶ 46} "THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OF MITIGATION."
 I {¶ 47} Appellants, in their sole assignment of error, argue that the trial court erred in its application of the doctrine of mitigation.[2] We agree.
 {¶ 48} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 49} The failure to mitigate damages is an affirmative defense in Ohio. Young v. Frank's Nursery Crafts, Inc.
(1991), 58 Ohio St.3d 242, 244, 569 N.E.2d 1034. The burden of proving a failure to mitigate damages lies with the party asserting the defense. Hines v. Riley (1998),129 Ohio App.3d 379, 717 N.E.2d 1133. It has been held that reasonable efforts must be made to mitigate damages, not extraordinary efforts. Id.
 {¶ 50} The Supreme Court of Ohio in Frenchtown Square P'shipv. Lemstone, Inc., 99 Ohio St.3d 254, 791 N.E.2d 417,2003-Ohio-3648, held that "* * * under the common law of contracts, mitigation is a fundamental tenet of a damage calculus. Contracts are the mutual exchange of promises, with each party holding an expectation of certain obligations and benefits. Thus, contract law acknowledges that mitigation, otherwise known as the doctrine of avoidable consequences, may justly place an injured party `in as good a position had the contract not been breached at the least cost to the defaulting party.' F. Ent., Inc. v. Kentucky Fried Chicken Corp. (1976),47 Ohio St.2d 154, 159-160, 351 N.E.2d 121." Id. at paragraph 12.
 {¶ 51} Based on the foregoing, the burden was on appellee to show that appellants failed to use reasonable efforts to mitigate any damages. As is stated above, appellants claimed that, as a result of appellee's breach, they incurred a total of $13,050.23 in damages. Appellants produced evidence at trial to such effect and the Magistrate, in her decision, found that, as a result of appellee's breach, appellants "were damaged by the loss of the net proceeds that they were to receive at closing: $9,850.23." The Magistrate further found that, as a result of appellee's breach, appellants were damaged because they remain obligated to Donna Mills, their realtor, for $3,200.00.[3]
 {¶ 52} Assuming, arguendo, that appellants failed to use reasonable efforts since they stopped actively trying to sell the lot after appellee's breach, we find that appellee still did not meet her burden of proving that appellants failed to mitigate their damages. As is stated above, appellee testified that the property was worth $9,000.00 less than the purchase price since it needed $9,000.00 worth of soil remediation to make it buildable. Thus, as noted by appellants, "[a] continued listing, even if it resulted in a sale at the reduced market rate, would not have made up for the loss caused by Appellee's breach." It, therefore, would have been a vain act for appellants to continue listing the property. The law does not require the performance of a vain act. See, for example, Carlin v. Mambuca (1994),96 Ohio App. 3d 500, 512, 645, N.E.2d 737.
 {¶ 53} Based on the foregoing, we find that the trial court erred in applying the doctrine of mitigation.
 {¶ 54} Appellants' sole assignment of error is, therefore, sustained.
 {¶ 55} Accordingly, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with this opinion.
Edwards, J. Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded for further proceedings. Costs assessed to appellee.
[1] Since the trial court's finding that appellants did not commit fraud has not been appealed, the testimony relating to such issue shall not be summarized in the facts.
[2] We note that appellee has not appealed the trial court's finding that she breached the purchase agreement.
[3] We note that the trial court's calculation of damages is not before this Court on appeal.