**BLAKE HOMES, LTD., Appellee,**

v.

**FIRSTENERGY CORPORATION etc., Appellants.**

</div>

[Cite as *Blake Homes, Ltd. v. FirstEnergy Corp.*, 173 Ohio App.3d 230, 2007-Ohio-4606.]

<div align="center">

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–06–1269.

Decided Sept. 7, 2007.

</div>

232

Terry J. Lodge, for appellee.

Denise M. Hasbrook, for appellants.

Osowik, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, in which appellants, FirstEnergy Corporation ("FirstEnergy") and the Toledo Edison Company ("Toledo Edison"),[1] were

---

1. In the interest of simplicity, appellants, Toledo Edison and FirstEnergy, will be referred to collectively as Toledo Edison throughout this decision and judgment entry.

ordered to pay appellee, Blake Homes, Ltd. ("Blake Homes"), damages in the amount of $217,678.03 for breach of contract. On appeal, appellants set forth the following five assignments of error:

{¶ 2} "1. The award is against the manifest weight of the evidence because Blake Homes failed to mitigate its damages.

{¶ 3} "2. The jury's finding that the contract continued to be breached each month on this divisible contract after May 10, 2001 is against the manifest weight of the evidence.

{¶ 4} "3. The jury's finding that a breach occurred each month from May, 2001 through May, 2006 on this divisible contract was against the manifest weight of the evidence where the charges were never presented.

{¶ 5} "4. The jury's award of damages after Blake became the end user as stated in the contract was against the manifest weight of the evidence.

{¶ 6} "5. The jury's award of damages after the home was no longer suitable for use as a model home after May 10, 2002 was against the manifest weight of the evidence."

{¶ 7} This appeal arises out of a longstanding disagreement between the parties as to who is responsible for paying certain expenses for a luxurious, all-electric, "model home" that was built by Blake Homes at the request of Toledo Edison. The relevant circumstances giving rise to the parties' dispute are as follows.

{¶ 8} On March 12, 1997, Blake Homes and Toledo Edison executed a document titled "Eagles Landing Model Home Project Agreement." The subject of the agreement was the construction of a model home, to be located at 5110 Eagles Landing in Oregon, Ohio, on subdivision lot number 13 ("Lot 13"), which is owned by Toledo Edison. The agreement stated:

{¶ 9} "WHEREAS, Blake Homes requires several assurances as to the costs associated with the maintenance and demonstration of a geothermal home as a model in a new home development known as Eagles Landing Subdivision; and

{¶ 10} "WHEREAS, Toledo Edison desires to make the required assurances as to various costs associated with the demonstration of a geothermal home as a model in a new home development of such a geothermal model;

{¶ 11} " * * *

{¶ 12} "1. *Project Negotiations, Withdrawal, and Cost Sharing*

{¶ 13} "1.1 All project negotiations and subsequent agreements pertaining to the relationship created hereunder must be mutually agreed to, in writing, and appended to this agreement.

{¶ 14} " * * *

{¶ 15} "1.3. Costs: The following is a list of the costs that are to be assumed and paid by Toledo Edison during the term of this Agreement and/or [2] until the ultimate purchaser of the geothermal model home has taken possession of the home and the home is no longer a model.

{¶ 16} *"Banking*

{¶ 17} " * * *

{¶ 18} " *All interest on project.

{¶ 19} "Any costs associated with having the home not sold.

{¶ 20} *"Maintenance*

{¶ 21} "Cleaning of home when required.

{¶ 22} "Snow removal and ice control.

{¶ 23} "Grass cutting and lawn maintenance.

{¶ 24} "Carpet cleaning if required.

{¶ 25} "Touch up and repainting if required.

{¶ 26} "Repair any damage done to home after completion.

{¶ 27} *"Utilities Etc.*

{¶ 28} "Electric bills.

{¶ 29} "Security monthly service.

{¶ 30} "Phone line.

{¶ 31} "Cablevision

{¶ 32} "Water bills.

{¶ 33} *"Promotions and Advertising*

{¶ 34} "Toledo Edison will conduct all necessary advertising and promotion of the geothermal model home. Blake Homes will be recognized in the Advertising and Promotions as the builder of the model home."

{¶ 35} In addition to the above, paragraph 3.2 of the agreement stated that Blake Homes was to be the owner of the model home. Toledo Edison agreed to deed Lot 13 to Blake Homes upon substantial initiation of construction and promised that "upon sale of the geothermal model home in question and upon buyer taking possession of home, [Blake Homes] will reimburse Toledo Edison for the value of Lot 13, which value will be determined and appended to this

---

**2.** The words "and/or" were handwritten and inserted into the agreement with the consent of both parties.

agreement prior to construction of the home." Pursuant to paragraph 3.3, Blake Homes agreed to allow Toledo Edison to have access to the model home "for demonstration purposes." The last page of the agreement contained a handwritten provision, initialed by representatives of Toledo Edison and Blake Homes, which stated: "Project will remain a model home for a minimum of one year or until sold to end-user." The agreement was executed by Gray Greulich, on behalf of Toledo Edison, and Robert Dedo, on behalf of Blake Homes.

{¶ 36} For the first year after the agreement was executed, Toledo Edison made regular monthly payments to Blake Homes for the above-listed monthly expenses. However, in November 1998, Toledo Edison stopped making those payments. On August 19, 1999, Blake Homes filed suit against Toledo Edison to recover the unpaid monthly fees ("first lawsuit"). On May 22, 2001, the case was tried to a jury. At trial, Robert Dedo testified as to the costs associated with the model home and his attempts to market the home for sale. Dedo testified that pursuant to the agreement, Toledo Edison was to pay monthly expenses for the home for a minimum of one year, or until it was sold.

{¶ 37} In addition to Robert Dedo's testimony, various other witnesses testified as to the financing of the project, interior design of the model home, and Toledo Edison's involvement in marketing the home before, during, and after its construction. Various realtors then testified as to its fair market value. Finally, Greulich testified that the object of the project was to showcase electric technology and to allow Blake Homes to make a profit upon the sale of the model home. Greulich also stated that nothing in the agreement limited Toledo Edison's obligation for monthly expenses to only one year.

{¶ 38} At the close of all the evidence, the jury returned a verdict in favor of Blake Homes and ordered Toledo Edison to pay $80,750 in compensatory damages and $169,250 in punitive damages, along with attorney fees. The verdict was appealed to this court ("first appeal"). On August 16, 2002, a decision and judgment entry was issued, in which we affirmed the jury's verdict as to the award of $80,750 in compensatory damages and reversed the verdict as to the award of $169,250 in punitive damages, plus attorney fees. See *Blake Homes, Ltd. v. Toledo Edison Co.*, 6th Dist. No. L–01–1409, 2002-Ohio-4219, 2002 WL 1897595.

{¶ 39} On November 8, 2001, while the first appeal was still pending, Blake Homes filed a second complaint against Toledo Edison and its parent company, FirstEnergy, in which Blake Homes asserted that Toledo Edison continued to violate the terms of the agreement by refusing to pay monthly expenses for the model home ("second lawsuit"). On January 15, 2002, Toledo Edison filed an answer. On April 16, 2002, Toledo Edison filed a motion for summary judgment in which it argued that Blake Homes' claims are barred by the doctrines of res

judicata and collateral estoppel. In its memorandum in support, Toledo Edison argued that all of the issues raised in the second lawsuit were based on "a common nucleus of facts," which were fully and fairly litigated in the first lawsuit. Toledo Edison further argued that the breach was not continuing in nature, because the jury verdict in the first lawsuit extinguished all of Blake Homes' future claims against Toledo Edison. On May 23, 2002, Blake Homes filed a memorandum in opposition to summary judgment. Toledo Edison filed a reply on June 10, 2002. On March 26, 2003, the trial court granted Toledo Edison's motion for summary judgment and dismissed the complaint in the second lawsuit with prejudice. Blake Homes filed a timely notice of appeal in this court ("second appeal").

{¶ 40} On February 27, 2004, this court issued a decision and judgment entry in which we found that the agreement was a continuing contract, which required Toledo Edison "to periodically reimburse [Blake Homes] for the maintenance costs, after they were incurred, until the home was sold." *Blake Homes, Ltd. v. FirstEnergy Corp.*, 6th Dist. No. L–03–1109, 2004-Ohio-887, 2004 WL 367929, ¶ 16. We further found:

{¶ 41} "While the reimbursements owed by [Toledo Edison] were not fixed or scheduled payments, they were incremental duties [Toledo Edison] owed to [Blake Homes]. Because the contract at issue was a continuing contract, [Blake Homes] could sue [Toledo Edison] each time it refused to pay the maintenance costs as they were billed. The failure to pay for each time period presents a separate partial breach of the contract and separate operative facts." Id.

{¶ 42} Based on the above findings, we reversed the trial court's judgment. The case was remanded to the trial court for further proceedings. Id., ¶ 18.

{¶ 43} On April 12, 2004, Toledo Edison filed a declaratory-judgment action, in which it asked the trial court to extinguish its obligation to pay monthly expenses for the model home. In support, Toledo Edison asserted that Robert Dedo and his family had moved into the model home on May 10, 2002, and thereby became "end users" pursuant to the terms of the agreement. In addition, Toledo Edison sought damages for breach of contract, in an amount equal to the value of Lot 13. On August 31, 2004, at Toledo Edison's request, the trial court consolidated Toledo Edison's declaratory-judgment action and Blake Homes' second lawsuit.

{¶ 44} On July 15, 2005, Toledo Edison filed a motion for summary judgment, in which it argued that the agreement was terminated as a matter of law when the Dedo family moved into the model home and became the "end users" contemplated by the agreement. In support, Toledo Edison argued that Blake Homes failed to market the home for sale after the Dedo family moved in, and failed to mitigate its damages by allowing the Dedos to live in the home rent-free.

{¶ 45} On July 18, 2005, Blake Homes filed its own motion for summary judgment and memorandum in support, in which it argued that the terms of the agreement became "absolute" when Blake Homes fulfilled its obligation to build the model home. Blake Homes further argued that Toledo Edison is not entitled to declaratory judgment because it breached the terms of the agreement by refusing to pay monthly expenses for the home.

{¶ 46} On November 22, 2005, the trial court issued a judgment entry in which it found that issues of fact remained as to the issues raised by both parties. Accordingly, both motions for summary were denied, and the case proceeded to trial.

{¶ 47} A jury trial was commenced on May 15, 2006. Testimony was presented on behalf of Blake Homes by Robert and Kim Dedo; Dean Ensey, principal of Fassett Middle School; and realtor Wendell Robertson. Testimony was presented on behalf of Toledo Edison by its sales manager Gary Greulich, real estate appraiser John Yakumithis, and realtor Pam Aubry.

{¶ 48} Robert Dedo testified at trial that the initial cost to construct the model home was $400,000 and that even though Lot 13 was deeded to Blake Homes, Toledo Edison did not even attempt to determine its cost until January 2005. Robert Dedo stated that the model home has geothermal heating and cooling, which required the digging of six 180–foot wells, and installation of larger-than-average electrical and plumbing service. He further stated the home had many "amenities," including programmable lights, high-end electrical fixtures, large, triple-pane windows, an all-brick exterior, track lighting and an epoxy-coated floor in the garage, and reinforced floor boards.

{¶ 49} Robert Dedo testified that Toledo Edison stopped paying monthly expenses approximately 18 months after the model home was completed and that rather than paying the amount awarded in the first lawsuit, Toledo Edison made no more payments between May 2001 and May 2006. Robert Dedo further testified that as a result of Toledo Edison's failure to make payments, he could not afford to pay mortgages for both the model home and the family's home in a nearby subdivision. Consequently, they were forced to sell that home and move the family to 5110 Eagles Landing. After the move, the Dedos sought, and obtained, permission for their two children to attend school in their former school system. Robert Dedo stated that he never intended for his family to remain in the model home; however, they could not afford to move out until the house was sold or Toledo Edison resumed making monthly payments.

{¶ 50} Robert Dedo stated that in November 2002, he was contacted by James Powers, a FirstEnergy employee, through realtor Wendell Robertson. Powers offered to pay $400,000 for the model home even though, at that time, the stated price of the home was $539,000. The Dedos responded by lowering the asking

price to $438,000, with two additional conditions. First, they asked Powers to pay the realtor's commission. Second, they made the sale contingent on Toledo Edison's waiving the requirement that Blake Homes pay for Lot 13. Powers raised his offer to $438,000 and agreed to the first condition. However, Toledo Edison refused to waive its right to reimbursement for Lot 13, causing the deal to fall through. Robert Dedo further stated that in spite of his repeated requests, Toledo Edison refused to value Lot 13 until January 2005, when it stated that the lot was worth $45,000.

{¶ 51} As to efforts to sell the model home, Robert Dedo testified that he did not employ a realtor, because the real estate commission would further reduce his profit. He further testified that his cost to build the home exceeded $400,000, and he could not afford to sell it at a loss. Robert Dedo stated that he and his wife, as owners of Blake Homes, were forced to refinance the home on March 20, 2003, when the bank refused to continue carrying the interest-only construction loan. He further stated that although Blake Homes began accumulating equity in the home on that date, Toledo Edison was asked to reimburse the company for only the interest portion of the loan, as stated in the agreement.

{¶ 52} Robert Dedo testified that his family is not the "end-user" or the "ultimate purchaser" of the model home, since they did not purchase it from Blake Homes, and nothing in the agreement forbids a family from occupying the home. He stated that the monthly expenses for the model home from May 30, 2001, through May 11, 2006, amounted to $217,678.03. He further stated that the Dedo family would "move out tomorrow" if Toledo Edison would resume making payments, and he remodeled the basement of the model home before his family moved in, to make it more marketable and so he could have a business office in the home.

{¶ 53} On cross-examination, Robert Dedo stated that he did not market the home, other than placing a "for sale" sign out front. He further stated that he is unable to accept any further offers from prospective buyers without knowing the price of Lot 13. On redirect, Robert Dedo testified that pursuant to paragraph 1.3 of the agreement, Toledo Edison assumed the responsibility of advertising and promoting the model home.

{¶ 54} Ensey testified at trial that he was a neighbor of the Dedos until they sold their former home and moved to 5110 Eagles Landing. Ensey further testified that at Kim Dedo's request, he granted permission for the Dedo children to continue to attend Fassett Middle School after the move. Ensey stated that Kim Dedo was upset about the move. He further stated that since no bus transportation was available from Eagles Landing, the Dedos had to transport their two children six miles to school every day.

{¶ 55} Robertson testified at trial that he contacted Robert Dedo in 2002, at the request of Powers, who was interested in purchasing the model home. Robertson further testified that Powers walked away from the deal when Toledo Edison refused to negotiate on the price of Lot 13, in spite of Powers's own attempts to convince the company to do so. Robertson stated that the $539,000 asking price for the home was expensive for that area and that he would have priced the home between $420,000 and $435,000. Robertson further stated that most sellers are willing to reduce the asking price if a home does not sell within several months; however, home builders are usually less willing to sell a home below costs than ordinary home sellers.

{¶ 56} Kim Dedo testified at trial that she asked Ensey to allow her two children to continue to attend Fassett Middle School because they were very upset about the move. She further testified that, initially, she thought her family would not stay in the model home more than one year. Kim Dedo stated that she and her husband hired a realtor, Brad Sutphin, to market their old home, which sold within several days.

{¶ 57} Kim Dedo testified that the $217,678.03 in expenses for the model home included cutting the grass, removing weeds, and performing general maintenance and snow removal, all of which were done either by her husband, their son, Blake, or a Blake Homes employee. She further testified that the expenses included an exterminator, air fresheners, lawn fertilizer, a security system, and repairs to the garage door. Kim further stated that the above expenses would have been necessary, even if the model home had remained vacant.

{¶ 58} Greulich testified at trial that he had signed the agreement on behalf of Toledo Edison and had initialed the handwritten paragraph on page five of the document because it was in Toledo Edison's best interest for the home to be used as a model home for at least one year. Greulich stated that Toledo Edison stopped making monthly payments after the first year, because the model home "just kind of sat * * * and we ran our course of our commitment for the year and just decided to stop supporting it at that point in time." On cross-examination, Greulich stated that the agreement does not take Toledo Edison "off the hook" after one year; however, he thought a year "was it" for the company's obligation. Greulich further testified on cross-examination that the agreement is open to interpretation as to the valuation of Lot 13.

{¶ 59} Yakumithis testified at trial that he appraised Lot 13 at Toledo Edison's request, in January 2005. However, his valuation was based on the lot's value in 1997, which he placed at $41,700. Yakumithis further testified that after making adjustments for the exceptional quality of the model home, he appraised its value at $315,000. On cross-examination, Yakumithis testified that using a cost ap-

proach and including the price of the lot, the model home would be worth $428,000.

{¶ 60} Aubry testified at trial that based on a market analysis she performed for Toledo Edison in July 2005, a fair market price for the model home would have been $325,000. Aubry further testified that the cost of building the home was not a consideration in her estimate and that she had viewed the property and compared it to the sale prices of other comparable homes in the area. Aubry further stated that model homes are usually empty, and 5110 Eagles Landing Drive lacked the necessary "pizzazz" to be a model home after the Dedo family moved in.

{¶ 61} At the close of all the evidence, both parties made motions for a directed verdict, which were denied. The jury returned a verdict in favor of Blake Homes as to its breach-of-contract claim, and awarded Blake Homes $217,678.03 in damages. The jury also found that Toledo Edison was not entitled to declaratory judgment against Blake Homes as to the issue of payment for Lot 13. On July 24, 2006, the final judgment was journalized. A timely notice of appeal was filed on August 21, 2006.

{¶ 62} We note at the outset that in each of its assignments of error, Toledo Edison asserts that the jury's verdict and subsequent monetary award to Blake Homes was against the manifest weight of the evidence. In Ohio, judgments or verdicts in civil cases that are supported by some competent, credible evidence as to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 63} When the issue on appeal is manifest weight, an appellate court must presume that the trier of fact's findings are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81, 10 OBR 408, 461 N.E.2d 1273. "This presumption arises because the [trier of fact] had an opportunity to 'view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' [*Seasons Coal*] at 80, 10 OBR 408, 461 N.E.2d 1273. 'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' Id. at 81, 10 OBR 408, 461 N.E.2d 1273." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. Keeping this standard of review in mind, we will now analyze the issues raised by appellants' five assignments of error.

{¶ 64} In its first assignment of error, Toledo Edison asserts that the jury's $217,678.03 award to Blake Homes was against the manifest weight of the evidence. Specifically, Toledo Edison argues that evidence was presented to show that Blake Homes failed to mitigate its damages by making a greater effort to sell the model home, and/or charging the Dedo family rent to live in the home after May 10, 2002.

{¶ 65} This court has held that "[a]s with any breach of contract, the nonbreaching party has a duty to mitigate his or her damages." *W.O.M., Ltd. v. Willys–Overland Motors, Inc.*, 6th Dist. No. L–05–1201, 2006-Ohio-6997, 2006 WL 3825247, ¶ 32, citing *Farmers Comm. Co. v. Burks* (1998), 130 Ohio App.3d 158, 172, 719 N.E.2d 980. In Ohio, the failure to mitigate damages is an affirmative defense. *Young v. Frank's Nursery & Crafts, Inc.* (1991), 58 Ohio St.3d 242, 244, 569 N.E.2d 1034. Accordingly, "[t]he burden of proving a failure to mitigate damages lies with the party asserting the defense." *Clegg v. Cronin*, 5th Dist. No. 2005CA00281, 2006-Ohio-4997, 2006 WL 2742490, ¶ 49, citing *Hines v. Riley* (1998), 129 Ohio App.3d 379, 717 N.E.2d 1133. In such cases, the nonbreaching party is required to make only reasonable, not extraordinary, efforts to mitigate his or her damages. *Hines v. Riley*, supra.

{¶ 66} At trial, testimony was presented that the quality of the model home was "extraordinary"; Blake Homes' cost to build the home exceeded $400,000; the asking price for the home, $529,000, was higher than fair market value; and Robert Dedo was unwilling to reduce the asking price because doing so would cause Blake Homes to suffer a loss on the project. Testimony was also presented that a "for sale" sign was placed outside the model home and that Robert Dedo showed the home to at least 20 prospective buyers over the course of several years. Finally, testimony and supporting documentary evidence was presented that Powers, a FirstEnergy employee, offered to buy the home for $438,000 in 2002 and that but for Toledo Edison's refusal to waive the price of Lot 13, the sale would have occurred.

{¶ 67} As to whether the monthly expenses claimed by Blake Homes were excessive, the record contains evidence that expenses claimed by Blake Homes, which included mortgage interest,[3] lawn care, snow removal, electricity, and maintenance costs, were allocated to Toledo Edison in the agreement. Kim Dedo testified at trial that those expenses would have accrued regardless of whether her family was living in the home. In addition, Robert Dedo testified that he and

---

3. Toledo Edison argued at trial and on appeal that the expenses listed by Blake Homes included "equity" in the model home after the construction loan was refinanced. However, the record contains no evidence that Blake Homes claimed any mortgage expense other than interest on the loan, as stated in the agreement.

his wife refinanced the original interest-only construction loan at the insistence of their bank and that after the refinancing, only the interest portion of the loan was charged to Toledo Edison. In contrast, no evidence was presented to show that Toledo Edison's contractual obligation to pay those expenses would have abated if the Dedos had paid rent to Blake Homes.

{¶ 68} This court has reviewed the entire record of the trial court's proceedings and upon consideration thereof, we cannot say that the jury's rejection of Toledo Edison's affirmative defense of failure to mitigate damages was against the manifest weight of the evidence. Toledo Edison's first assignment of error is therefore not well taken.

{¶ 69} In its second and third assignments of error, Toledo Edison asserts that the jury's finding that Toledo Edison breached the agreement when it failed to make monthly payments from May 2001 through May 2006, was against the manifest weight of the evidence. In support, Toledo Edison relies on this court's prior statement:

{¶ 70} "Because the contract at issue was a continuing contract, appellant could sue appellee each time it refused to pay the maintenance costs as they were billed. The failure to pay for each time period presents a separate partial breach of contract and separate operative facts." *Blake Homes, Ltd. v. FirstEnergy Corp.*, 6th Dist. No. L–03–1109, 2004-Ohio-887, 2004 WL 367929, ¶ 16.

{¶ 71} Toledo Edison argues, based on the above excerpt, that monthly billing for the model home's expenses is a condition precedent for its liability under the terms of the agreement. Accordingly, Toledo Edison asserts that it is not liable for the expenses claimed in this case because Blake Homes did not bill Toledo Edison for those expenses on a monthly basis after May 2001. We disagree, for several reasons.

{¶ 72} First, a review of the record reveals that Toledo Edison moved for a directed verdict at the close of Blake Homes' evidence and again before the jury's deliberations began. Those motions were based on the "global" theory that Blake Homes failed to prove the agreement was still in effect after the Dedos moved into the model home. However, Toledo Edison did not argue to the trial court, or to the jury, that Blake Homes' failure to present monthly bills was fatal to its claim for reimbursement of those fees after May 2001. Accordingly, that argument has arguably been waived for purposes of this appeal. See *NCO Portfolio Mgt., Inc. v. Lewis*, 9th Dist. No. 06CA009001, 2007-Ohio-3965, 2007 WL 2229251, ¶ 6, citing *Holman v. Grandview Hosp. & Med. Ctr.* (1987), 37 Ohio App.3d 151, 157, 524 N.E.2d 903 ("Issues not raised and tried in the trial court cannot be raised for the first time on appeal").

{¶ 73} Second, even if the issue is not waived, it is well settled that where one party to a contract refuses to perform under the terms of the contract, an anticipatory repudiation is said to occur. *W.O.M., Ltd. v. Willys–Overland Motors, Inc.*, 6th Dist. No. L–05–1201, 2006-Ohio-6997, 2006 WL 3825247, ¶ 30, citing *Daniel E. Terreri & Sons v. Bd. of Mahoning Cty. Commrs.*, 152 Ohio App.3d 95, 105, 2003-Ohio-1227, 786 N.E.2d 921, ¶ 44; Restatement of the Law 2d, Contracts (1989), 272, Section 250(A). In such cases, the nonbreaching party is not required to sue immediately for damages, but may wait for a reasonable time to allow the breaching party to perform. *Benatty Corp. v. Transatlantic Energy Corp.* (Nov. 8, 1994), 5th Dist. No. 94–CA–12, 1994 WL 668103.

{¶ 74} As set forth above, the record is replete with evidence of Toledo Edison's refusal to pay Blake Homes according to the terms of the agreement. Greulich testified at the second trial that Toledo Edison had no intention of paying monthly expenses for the model home after November 1998, even though the agreement was not limited to only one year. The record also shows that the company's refusal to pay Blake Homes was reiterated both in written correspondence and by its refusal to resume making the monthly payments after a jury verdict was rendered in Blake Homes' favor in the first lawsuit. Having thus demonstrated the futility of making periodic requests for payment, Toledo Edison cannot now assert the failure to make such a request as a bar to Blake Homes' recovery. See *Benatty,* supra. (It is a long-established rule in Ohio that if a party's liability depends on the performance of a condition precedent, that party cannot avoid his own liability by doing some act that prevents the carrying out of the contract according to its terms. Id., relying on *Suter v. Farmers' Fertilizer Co.* (1919), 100 Ohio St. 403, 411, 126 N.E. 304.)

{¶ 75} This court has considered the entire record of proceedings in the trial court and, upon consideration thereof, we find that the record contains competent, credible evidence to support the jury's conclusion that Toledo Edison continuously breached the terms of the agreement after May 2001 by refusing to reimburse Blake Homes for monthly expenses related to the model home. Accordingly, Toledo Edison's second and third assignments of error are not well taken.

{¶ 76} In its fourth assignment of error, Toledo Edison asserts that the jury's finding that Blake Homes was not the "end user" of the model home was against the manifest weight of the evidence. Similarly, in its fifth assignment of error, Toledo asserts that the jury's finding that 5110 Eagles Landing did not cease to be a model home after the Dedos moved in was against the manifest weight of the evidence. In both assignments of error, Toledo Edison asserts that the jury erred in awarding Blake Homes damages in the amount of $217,678.03,

based on the above findings. Because these two assignments of error are interrelated, we will address them together.

{¶ 77} Generally, in order to establish a breach of contract, it must be shown by a preponderance of the evidence that (1) a contract existed, (2) one party fulfilled his obligations, (3) the other party failed to fulfill his obligations, and (4) damages resulted from that failure. *Spano Bros. Constr. Co., Inc. v. Adolph Johnson & Son Co.,* 9th Dist. No. 23405, 2007-Ohio-1427, 2007 WL 912229, ¶ 12, citing *Lawrence v. Lorain Cty. Community College* (1998), 127 Ohio App.3d 546, 548–549, 713 N.E.2d 478. In cases where the facts are undisputed, and the only question to be resolved is whether a breach of contract occurred, a question of law exists for the court to decide. *Farmers Market Drive–In Shopping Ctrs., Inc. v. Magana,* 10th Dist. No. 06AP–532, 2007-Ohio-2653, 2007 WL 1560276, ¶ 32. However, when there is a dispute as to whether the parties' respective actions are sufficient to satisfy the terms of the contract, a question of fact is presented for the trier of fact to decide. Id.; *Butler Cty. Bd. of Commrs. v. Hamilton* (2001), 145 Ohio App.3d 454, 478, 763 N.E.2d 618.

{¶ 78} In either a civil or criminal trial, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. On appeal, a reviewing court must defer to the determination of the jury as to such issues, because it was "in the best position to observe the witness' demeanor, voice inflection, and mannerisms." *State v. Ballard,* 8th Dist. No. 88279, 2007-Ohio-4017, 2007 WL 2269570, ¶ 23, citing *DeHass,* supra.

{¶ 79} In this case, Toledo Edison claims that it should not have to pay damages to Blake Homes, because it did not breach the terms of the agreement by refusing to pay the monthly expenses after May 2001. In support, Toledo Edison argues that evidence was presented at trial that (1) Blake Homes became the "end user" of the model home when the Dedo family moved in and (2) the home became unsuitable as a model home after the Dedos moved in.

{¶ 80} As set forth above, Aubry testified that 5110 Eagles Landing ceased being a model home the day the Dedo family moved in, and Robertson opined that the home was no longer fit to be a model home. In contrast, Robert and Kim Dedo testified that they were neither "end users" nor the "ultimate purchasers" of the home, because their family did not intend to permanently live there, and Ensey testified that the Dedos drove their two children to school every day because they anticipated moving back into their former school district when the 5110 Eagles Landing was eventually sold. In addition, Robert Dedo stated that he would allow Toledo Edison to use the home as a model if it resumed

paying the monthly fees. Finally, it is undisputed that nothing in the agreement forbids the Dedo family, or any other family, from occupying the home at any time while the agreement is in force. The jury resolved this conflicting evidence by finding that a preponderance of the evidence showed that (1) the Dedos were not the "end users" of the home and (2) 5110 Eagles Landing continued to be available as a model home, even though the Dedo family lived in it after May 2002.

{¶ 81} Upon consideration of the trial court's entire record, this court finds that there was sufficient competent, credible evidence presented at trial to support the jury's determination. Toledo Edison's fourth and fifth assignments of error are not well taken.

{¶ 82} The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant, Toledo Edison, is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

PIETRYKOWSKI, P.J., and HANDWORK, J., concur.