[Cite as *Crowe Ents., Inc. v. Amicon Med. Group, Inc.*, 2014-Ohio-11.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| CROWE ENTERPRISE, INC., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0031** |
| AMICON MEDICAL GROUP, INC., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2008 CV 001988.

Judgment: Reversed and remanded.

*Jared L. Wilson*, 250 South Prospect Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Gary L. Lieberman*, Gary L. Lieberman Co., LPA, 30195 Chagrin Boulevard, Suite 300, Pepper Pike, OH 44124 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the Portage County Court of Common Pleas. The trial court determined that defendant-appellant Amicon Medical Group, Inc. ("Amicon") could not recover for appellee Crowe Enterprises, Inc.'s ("Crowe Enterprises") alleged anticipatory repudiation of another contract because (1) Amicon did not follow the claim-dispute mechanism in that contract and (2) there was no anticipatory repudiation. Amicon timely appeals. For the following reasons, we reverse and remand for further proceedings.

{¶2} This case originally arose out of Crowe Enterprises', a masonry subcontractor, efforts to recover approximately $20,000 from Amicon, a general contractor in construction, from a previous contract between the parties. At trial, the parties stipulated that Amicon was liable to Crowe Enterprises for $19,675 in regard to this previous contract. However before trial, in response to Crowe Enterprises' complaint, Amicon filed a multiple-count counterclaim alleging that Crowe breached a masonry contract with Amicon regarding the construction of the SAGA Medical Building in Middleburg Heights ("the SAGA contract") and that Amicon incurred $38,148.20 in damages from having to hire another subcontractor for the masonry work. This appeal concerns the dispute around the SAGA contract.

{¶3} On April 1, 2008, Amicon and Crowe Enterprises entered into a contract where Crowe Enterprises would perform the masonry work for Amicon's construction projection regarding the SAGA Medical Building. The contract indicates that time was of the essence; however, no start date was put into the contract. According to Doug Crowe, vice president of Crowe Enterprises, performance of the contract was supposed to commence in May of 2008 based off of previous conversations he had with Amicon agents leading up to the signing of the contract. Doug Crowe testified that he relied upon the May start time given the limited amount of crews Crowe possessed. When it became apparent that the project was going to be delayed, Doug Crowe alleged he made several attempts with Amicon agents to obtain an update on when the masonry work would start without answer. Though Doug Crowe acknowledged that delays of up to two to three weeks are typical in construction, Crowe Enterprises would not begin work on the SAGA contract until late July or early August 2008.

2

**{¶4}** According to Bruce Baum, president of Amicon, work was supposed to commence in July of 2008. Baum further testified that he had several oral conversations over the telephone about the start date of Crowe's work on the SAGA contract. However, when Amicon had to delay construction and Baum was not aware of whether a revised schedule was sent to Crowe Enterprises.

**{¶5}** Crowe Enterprises started some preliminary work on the SAGA contract at some point in either mid or late July. Because Crowe Enterprises had other projects ongoing in the fall and a shortage of personnel to work the SAGA contract, Crowe Enterprises determined it could not continue working on the SAGA contract. On or about August 1, 2008, Crowe wrote an e-mail to Amicon stating that:

**{¶6}** "Bruce,

**{¶7}** "We are not going to be able to get to this job by Monday. We need to walk away from this project, sorry I talked to Jason Mamrak w/ Mamrak's Masonry, he sounds like he has a good Number and a handle on the job. The crew we had pricing got another job yesterday and can't make it anyway. (warren jones masonry) I think you'll get the best service from using him and the $ are very close. We will walk away and not expect anything for the labor already completed. The material already delivered will stay with the job and billed to whoever is paying for the material, you can handle that with Bierce.

**{¶8}** "I hope this will not hurt our relationship for future projects, but I understand

**{¶9}** "Doug Crowe."

**{¶10}** On August 1, 2008, Mike Jones, an employee of Amicon replied that:

**{¶11}** "Hey Doug

3

**{¶12}** "We understand you got swamped. Thanks for the honesty. I[t] happens to us all at times. Don't worry you are still on our bid list.

**{¶13}** "* * *

**{¶14}** "Thanks

**{¶15}** "Mike Jones."

**{¶16}** A trial was held on October 15, 2010. The parties stipulated to the jurisdiction of the court. In regard to the e-mail exchange, Crowe argued the e-mail exchange was a mutual rescission of the contract, while Amicon argued the e-mail exchange was indicative of anticipatory repudiation by Crowe. In Crowe's closing argument brief, it claimed for the first time that Amicon's counterclaim was barred because it did not comply with the claim dispute mechanism in the SAGA contract. The claim dispute mechanism requires a party that seeks litigation under the contract to, among other things, negotiate a solution among themselves, explore alternative dispute resolution, and then file suit in the Circuit Court of the Judicial Circuit in and for Cuyahoga County, Ohio.

**{¶17}** The magistrate dismissed the counterclaim on the grounds that the failure to comply with the claim dispute mechanism barred the counterclaim. The magistrate also found that the claim for the anticipatory repudiation was without merit because Crowe had started performance of the contract. The trial court made similar findings as the magistrate and adopted the magistrate's findings over Amicon's objections.

**{¶18}** Because appellant's first three assignments of error seek the reversal of the application of the claim-dispute mechanism provided in the SAGA Contract, we will consolidate them in our review. As Amicon's first, second, and third assignments of error, Amicon alleges that:

4

{¶19} "[1.] Crowe's Stipulation that the Court had Jurisdiction to Hear Amicon's Claim and Crowe's allowing the case to be Tried on the Merits Constituted a Waiver of the Claims-Dispute Provision in its Entirety.

{¶20} "[2.] The Trial Court Cannot Find Amicon Waived Enforcement of the Claims-Dispute Provision in the Fairlawn Contract Without Finding that Crowe Waived Enforcement of the Claims-Dispute Provision in the SAGA Contract.

{¶21} "[3.] The Claims-Dispute Provision was Inapplicable To Amicon's Claim Because There Was to be No Performance Under the SAGA Contract and No Payments were to be Made Under the SAGA Contract."

{¶22} Because the question of waiver is usually a fact-driven issue, we review the trial court's decision for an abuse of discretion. *Ohio Bell Telephone v. Central Transport*, 8th Dist. Cuyahoga No. 96472, 2011-Ohio-6161, ¶17. The phrase "abuse of discretion" indicates the trial court's attitude in issuing its decision was arbitrary, unreasonable, or otherwise unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Should a question of law be raised, however, we will review those issues de novo. *Wren v. Tutolo*, 11th Dist. Geauga No. 2012-G-3104, 2013-Ohio-995, ¶8.

{¶23} To prove waiver of an arbitration clause or other alternate dispute resolution clauses in contracts, the opposing party must show (1) knowledge of the existence of the right being waived and (2) conduct that is inconsistent with the enforcement of that right. *Hogan v. Cincinnati Fin. Corp.*, 11th Dist. Trumbull No. 2003-T-0034, 2004-Ohio-3331 ¶23. To determine whether a party has engaged in conduct that is inconsistent with the enforcement of that right we look at the totality of the

5

circumstances. *Glenmoore Builders v. Kennedy*, 11th Dist. Portage No. 2001-P-0007, 2001 Ohio App. LEXIS 5449, at *10 (December 7, 2001).

**{¶24}** Active participation in litigation "evincing an acquiescence to proceeding in a judicial rather than arbitration forum" has been found to constitute a waiver. *Griffith v. Linton*, 130 Ohio App.3d 746, 752 (10th Dist.1998) (quoting *Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik Gmbh*, 832 F. Supp. 1293, 1295 (E.D. Wis. 1993)). Though there is much debate about when a party becomes an active participant in litigation, this court has previously determined that filing a motion for summary judgment will waive an arbitration clause because a motion for summary judgment "places the dispute squarely before the court for resolution on the merits and demonstrates an election to proceed with litigation as opposed to arbitration." *Hogan*, ¶25 (quoting *Griffith v. Linton*, 130 Ohio App. 3d 746, 753 (10th Dist.1998)).

**{¶25}** Here, the SAGA contract contains a claim dispute mechanism that requires parties before filing suit to give notice of the complaint a party has against another, attempt to negotiate a resolution to the claim, and explore alternate dispute resolutions including arbitration. Crowe was aware of this provision and yet proceeded to trial on the merits of Amicon's counterclaim without ever raising the issue of Amicon's noncompliance with the claim dispute mechanism until the end of trial.[1] By failing to raise the issue earlier, Crowe waived any right they had to enforce the claim-dispute resolution against Amicon.

**{¶26}** Though we recognize this claim dispute mechanism is not strictly speaking an arbitration clause, the principles regarding waiver of arbitration apply with equal

---

1. The trial court, in its April 3, 2012 Order and Journal Entry claim that Crowe first raised the issue in the October 12, 2010 pre-trial brief. After searching through that brief, however, we find nothing that would put Amicon on notice of the need to respond.

6

force. When the parties proceed to trial on a claim that is subject to a claim dispute mechanism in a contract, the enforcement of that claim dispute mechanism is waived. Like a motion for summary judgment, placing the merits of the claim before the factfinder unequivocally indicates a willingness to be bound by its findings, notwithstanding the claim dispute mechanism.

{¶27} The first assignment of error is well-taken. In light of our ruling on the first assignment of error, the second and third assignments of error are moot.

{¶28} As its fourth assignment of error, Amicon alleges that:

{¶29} "Crowe's Conduct and Statements Regarding the SAGA Contract Constituted an Anticipatory Repudiation of the SAGA Contract."

{¶30} Under the civil manifest weight of the evidence standard, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202 ¶24 (quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus). "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.* (quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984)).

{¶31} An anticipatory repudiation of a contract occurs when one party to the contract refuses to perform under the contract's terms *before* the time for performance has arrived. *Southeast Land Development, Ltd. v. Primrose Management, L.L.C.*, 193 Ohio App.3d 465, 2011-Ohio-2341, ¶7 (3d Dist.) (citing *Blake Homes, Ltd. v FirstEnergy Corp.*, 173 Ohio App.3d 230, 2007-Ohio-4606, ¶73 (6th Dist.)).

7

**{¶32}** "An anticipatory breach of contract must be an unequivocal repudiation of the contract. [*Sentinel Consumer Prods., Inc. v. Mills, Hall, Walborn & Assocs., Inc.*, 110 Ohio App. 3d 211 (1996).] A mere request for a change in terms or for cancellation does not constitute a repudiation. * * * Similarly, a mere expression of doubt as to willingness or ability to perform is insufficient to constitute repudiation of a contract." *Southeast Land Dev., Ltd. v. Primrose Mgmt., LLC, supra* (other citations omitted). Ultimately, "[w]hether a party has repudiated a contract or merely expressed doubt as to willingness to perform is a question of fact." *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 172, (1998).

**{¶33}** In the present matter, the magistrate found that there was no anticipatory repudiation based on the fact that work had already been performed. In Doug Crowe's e-mail to Amicon, Crowe writes that "[w]e need to walk away from this project" and later reaffirms his earlier statement by saying "[w]e will walk away and not expect anything for the labor already completed." Because Doug Crowe's e-mail, as well as both parties' testimony, indicated Crowe had started performance on the SAGA contract before informing that it would not further perform, Crowe could not anticipatory repudiate the contract as a matter of law. Anticipatory repudiation can only occur before the performance of the contract, not after.

**{¶34}** Where a breach of contract occurs, however, focusing on the time and legal characterization of that breach is academic and avoids the central issues of the litigation: namely, whether a breach occurred and, if so, what are the damages. Unfortunately, we cannot yet decide whether there was a breach of contract due to insufficient findings by the trial court. It is undisputed that (1) there was a contract between Amicon and Crowe Enterprises, (2) Crowe Enterprises began some work on

8

the contract in late July or early August 2008, (3) Crowe Enterprises ceased performing work on the contract, and (4) Amicon alleges damages resulting from Crowe's cessation of activities on the SAGA contract. Whether this conduct amounted to a breach of contract is something the trial court has not yet decided. Indeed, even though the trial court has found that there was no mutual rescission of or an accord and satisfaction relating to the SAGA contract, we cannot rule out the possibility that Crowe Enterprises has further defenses regarding their alleged breach of the SAGA contract that have not been addressed.

{¶35} The fourth assignment of error is overruled to the extent that no anticipatory breach was found.

{¶36} Accordingly the judgment of the Portage County Court of Common Pleas is reversed and we remand for further proceedings. As the parties have waived the claim dispute mechanism in the SAGA contract, the trial court should determine on remand whether there was a breach of contract, assess Crowe Enterprises' defenses, and award damages, if any.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.