[Cite as *State v. Smith*, 2014-Ohio-3855.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. WD-13-057 |
| Appellee | Trial Court No. 12 CR 395 |
| v. | |
| Amanda Smith | **DECISION AND JUDGMENT** |
| Appellant | Decided:  September 5, 2014 |

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
Heather Baker and David T. Harold, Assistant Prosecuting
Attorneys, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, Amanda Smith, appeals the judgment of the Wood County Court
of Common Pleas ("trial court"), finding her guilty of one count of complicity to rape and
sentencing her to a prison term of 10 years.  For the following reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} On November 7, 2011, appellant's stepfather, W.L., reported to the Bowling Green Police Department that appellant had received several photos from A.L. revealing instances of sexual abuse against A.L.'s 17-month old daughter, E.L. Upon further investigation, the police discovered that appellant encouraged A.L. to engage in the sexual activities depicted in the photos and asked him to send her the pictures upon completion of the acts. Appellant was 17 years old at the time of the incident. Appellant confessed to her involvement in the incident when she was questioned by the police, indicating that she received sexual gratification from the pictures.

{¶ 3} As a result of the foregoing, a complaint was filed on November 8, 2011, in the Wood County Court of Common Pleas, Juvenile Division ("juvenile court"), charging appellant with an act that, if committed by an adult, would constitute complicity to rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. Thereafter, the state filed a motion to relinquish jurisdiction under Juv.R. 30. Upon a finding of probable cause that appellant committed the acts charged in the complaint, the juvenile court continued the matter for an amenability hearing.

{¶ 4} The amenability hearing occurred on three separate days. On the first day of the hearing, appellant presented the testimony of Dr. Gerald J. Briskin. Regarding his examination of appellant, Dr. Briskin testified that appellant

> * * * presented a rather unusual clinical picture. From a diagnostic standpoint there really is no clear-cut entity that she fits into, but in

understanding the personality dynamics, the way she's put together, the impact of her life experiences, you can formulate a picture of the way she tends to function, her general personality, her general personality structure. * * * But what I concluded was that as [a] result of her history and her life experiences she is basically a very, very dependent individual and a very frightened individual.

{¶ 5} Dr. Briskin went on to characterize appellant's actions as a hypomanic incident, and opined that appellant had an atypical bipolar reaction. To appellant, Dr. Briskin testified, the sexually explicit conversation with A.L. was a fantasy. He stated that the fantasy was appellant's "way of escaping the reality of what was going on in her life with the passing of her aunt." He concluded that appellant was fantasizing "because there – there was no contact of any physical nature, any visual nature. It was all in her head and it was impersonal. It was avoidant. She didn't really want to be involved."

{¶ 6} When questioned about whether appellant's condition was amenable, Dr. Briskin stated that counseling would be necessary, but that appellant was cooperative and responsive. Thereafter, defense counsel asked Dr. Briskin whether the necessary progress could be obtained by the time appellant turned 21, to which he replied: "Yeah. Again, you know, that's a judgment call. I would say, you know, I would – I would be hopeful and think that the prognosis is favorable given the circumstances and given what you're starting with because her problems are not essentially behavioral problems, they're personal emotional problems." Regarding amenability, Dr. Briskin further stated:

I think she's amenable to treatment, I think that this has been a very instructive kind of experience for her. I think in terms of her history of no prior difficulties, no conflict with the law, no antisocial behavior, that she is very amenable to treatment.

{¶ 7} Ultimately, Dr. Briskin concluded that appellant was too immature to be transferred to the general trial division to be tried as an adult.

{¶ 8} On the second day of the amenability hearing, the state solicited the testimony of Wood County probation officer Laura Graves. In her testimony, Graves stated that, in her experience, treatment for juvenile sexual offenders takes an average of two years to complete. Graves indicated that she had reservations about appellant's amenability, primarily due to the timeframe involved (since appellant was approaching 19 years of age at the time of the hearing). Moreover, Graves explained that the timeframe usually exceeds two years where the offender fails to accept responsibility for the actions. Here, Graves was concerned that appellant was not taking responsibility for her actions insofar as she stated to Graves that "she should have been awarded a medal for reporting the incidents."

{¶ 9} Next, the state called E.L.'s mother, B.T., and grandmother, T.J. Both witnesses testified that they noticed marked changes in E.L.'s behavior following the incidences of sexual abuse, including a propensity to lash out physically against her caregivers. Specifically, B.T. stated that E.L. would "hit people, pull hair, bite." T.J. elaborated on E.L.'s behavior, stating: "She started to get really angry about little things.

4.

I mean, yeah, in a toddler you have fits, tantrums, but this was beyond that. She would lash out, scratch your face, pull your hair, smack you. I mean it was – it was to the point where she would hurt you as badly as she possibly could as a little child." Further, T.J. noted the changes in E.L.'s relationship with her grandfather, including a refusal to play games with him or be affectionate towards him.

{¶ 10} On the final day of the amenability hearing, appellant called the medical director of the Court Diagnostic and Treatment Center, Dr. Thomas Sherman, who was ordered by the court to conduct an amenability evaluation on appellant. Upon examining appellant, Dr. Sherman diagnosed her with borderline personality disorder. When asked whether appellant would benefit from being placed into the adult rehabilitative system, Dr. Sherman responded: "I think that there's nothing in the adult system that could possibly help this kind of condition. That's not to say that there's much in the juvenile system that could help it either." Dr. Sherman went on to note that "[t]his is a tough case to treat unless you've got a lot of money and can get somebody into long-term psychotherapy, but talking therapy helps this, medication does not. * * * You're talking about Cadillac treatment here and I'm not sure that that's available within the juvenile justice system." Dr. Sherman opined that appellant's case was "difficult" and that completion of treatment by the time appellant turned 21 would be "a real stretch."

{¶ 11} Upon conclusion of the amenability hearing, the juvenile court took the matter under advisement. Subsequently, on July 24, 2012, the juvenile court issued its decision transferring the matter to the general trial division. In its decision, the juvenile

court provided a detailed analysis of the amenability factors contained in R.C. 2152.12(D) and (E). Specifically, the juvenile court found that appellant was mature enough for transfer to the general trial division, and was not suffering from a mental illness. The juvenile court also determined that there would not be sufficient time to rehabilitate appellant within the juvenile justice system, as she was already 18 years old at the time of the hearing. Ultimately, the juvenile court concluded that "[appellant] is not amenable to care or rehabilitation within the juvenile justice system and that the safety of the community requires [appellant] be subject to adult sanctions."

{¶ 12} Upon transfer to the trial court, the matter proceeded through pretrial, during which time appellant filed a motion to suppress, which was subsequently denied. Thereafter, appellant entered into a plea agreement with the state, wherein appellant agreed to plead guilty to one count of complicity to rape in exchange for the state's modification of the indictment to remove any mention of the victim's age, thereby eliminating the possibility of a life sentence. After accepting appellant's guilty plea, the trial court immediately sentenced appellant to the agreed upon ten-year prison term. Appellant's timely appeal followed.

## B. Assignments of Error

{¶ 13} On appeal, appellant assigns the following errors for our review:

1) The Juvenile Court abused its discretion by granting the State's motion to relinquish jurisdiction.

2)  Appellant received ineffective assistance of counsel when counsel allowed appellant to enter a guilty plea and agree to a mandatory ten year prison term.

## II.  Analysis

### A.  Motion to Relinquish Jurisdiction

{¶ 14} In her first assignment of error, appellant argues that the juvenile court erred in granting the state's motion to relinquish jurisdiction.

{¶ 15} "A juvenile court's decision to relinquish jurisdiction in a discretionary transfer proceeding conducted pursuant to R.C. 2152.12 will not be overturned on appeal absent a finding of abuse of discretion."  *State v. Fontenet*, 6th Dist. Lucas No. L-10-1366, 2013-Ohio-1355, ¶ 30, citing *State. v. Grimes*, 2d Dist. Greene No. 2009-CA-30, 2010-Ohio-5385, ¶ 14.  An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 276 (1983).

{¶ 16} Transfer of a juvenile proceeding is governed by R.C. 2152.12.  Under R.C. 2152.12(B), a juvenile court may transfer a case to the general trial division if the court finds that (1) the child was at least 14 years of age at the time of the offense, (2) there is probable cause to believe the child committed the offense, and (3) the child is not amenable to rehabilitation within the juvenile system, and the safety of the community may require adult sanctions.  In determining whether the child is amenable to rehabilitation within the juvenile system, the juvenile court must consider "whether the

7.

applicable factors under [R.C. 2152.12(D)] indicating that the case should be transferred outweigh the applicable factors under [R.C.2152.12(E)] indicating that the case should not be transferred." R.C. 2152.12(B)(3). Moreover, the juvenile court must specifically indicate the factors that it considered in rendering its decision. *Id.*

{¶ 17} Here, appellant acknowledges that she was over 14 years of age at the time the offense was committed. Further, she does not contest the juvenile court's finding of probable cause. Rather, she argues that the juvenile court did not properly examine the factors set forth in R.C. 2152.12(D) and (E).

{¶ 18} R.C. 2152.12(D) sets forth a list of nine factors for the court to consider that weigh in favor of transfer. The court may also consider "any other relevant factors" in arriving at its decision. The factors that were considered by the juvenile court in this case are:

(1) The victim of the act charged suffered physical or psychological harm * * * as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

* * *

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

8.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 19} R.C. 2152.12(E) sets forth the following factors that argue against such a transfer. The juvenile court considered these factors, and found the following relevant to this case:

* * *

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

* * *

(5) The child previously has not been adjudicated a delinquent child.

{¶ 20} In this case, appellant contends that the juvenile court improperly weighed the factors listed above. In particular, appellant argues that the juvenile court's conclusion that she was not amenable to rehabilitation within the juvenile system was unreasonable and not supported by the evidence. We disagree.

{¶ 21} We note at the outset that the juvenile court's judgment entry includes a thorough analysis of each factor contained in R.C. 2152.12(D) and (E). Indeed, the juvenile court provided its reasoning with respect to each relevant factor and explained why certain factors were irrelevant. Regarding appellant's amenability under R.C. 2152.12(D)(9) and (E)(8), the juvenile court noted that, at the time of the hearing, appellant was 18 years of age, leaving her less than three years to be rehabilitated within

9.

the juvenile system. The juvenile court went on to examine the testimony provided at the amenability hearing, concluding that there was not sufficient time to rehabilitate appellant within the juvenile system.

{¶ 22} Upon consideration of the evidence produced at the amenability hearing, along with the juvenile court's judgment entry, we find that the juvenile court adequately considered the entire record and analyzed the evidence in light of the factors both in favor of and against the transfer of jurisdiction. Notably, we have previously stated that "a 'juvenile court is not bound by the experts' opinions in making its determination whether the defendant is amenable to rehabilitation.'" *State v. Houston*, 70 Ohio App.3d 152, 156, 590 N.E.2d 839 (6th Dist.1990), quoting *State v. Dickens*, 9th Dist. Summit No. 12967, 1987 WL 17928 (Sept. 23, 1987). Nevertheless, we find that the expert evidence at the hearing supports the juvenile court's findings.

{¶ 23} Regarding appellant's amenability, Dr. Briskin could not definitively state that appellant would be rehabilitated by the time she turned 21. Rather, Dr. Briskin stated that he was "hopeful" that appellant could be rehabilitated within that timeframe. Further, Dr. Sherman testified that appellant would need the "Cadillac treatment" in order to complete rehabilitation by her 21st birthday. Even with such treatment, rehabilitation would be a "stretch" according to Dr. Sherman. Given the foregoing testimony, and in light of the seriousness of the underlying offense and the age of the victim, we cannot say that the juvenile court's finding that appellant was not amenable to rehabilitation within

10.

the juvenile system was unreasonable, arbitrary, or unconscionable.  Thus, the juvenile court did not abuse its discretion when it granted the state's motion to relinquish jurisdiction.

{¶ 24} Accordingly, appellant's first assignment of error is not well-taken.

### B.  Ineffective Assistance of Counsel

{¶ 25} In her second assignment of error, appellant argues that her trial counsel rendered ineffective assistance by allowing her to enter a guilty plea and agreeing to a mandatory ten-year prison sentence.

{¶ 26} To support a claim for ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that but for counsel's error, the result of the proceedings would have been different. *Id.* at 687–688, 694.  In *Strickland*, the United States Supreme Court opined,

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. *Id.* at 697.

11.

{¶ 27} Here, appellant argues that effective trial counsel would never have allowed her to enter into a plea agreement resulting in a ten-year prison sentence. She contends that trial counsel "saw no positive outcome and just gave up." However, as appellant acknowledges, the plea agreement negotiated by her trial counsel eliminated the potential for the trial court to impose a life sentence. Further, the Ohio Supreme Court has previously held that acts that are based upon reasonably debatable tactical strategies do not give rise to a claim of ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). "The *Clayton* analysis has been applied in the context of recommendations by counsel on whether to accept a proposed plea agreement." *State v. McIntosh*, 6th Dist. Erie No. E-07-048, 2008-Ohio-4743, ¶ 33, citing *State v. Burke*, 7th Dist. Columbiana No. 98-CO-64, 2000 WL 288522 (Mar. 15, 2000); *State v. Jiminez*, 8th Dist. Cuyahoga No. 75382, 1999 WL 342221 (May 27, 1999).

{¶ 28} Here, we find that counsel's plea recommendation to accept the plea agreement rather than run the risk of receiving a life sentence constituted a strategic decision that does not support a claim of ineffective assistance of counsel. *See State v. Jefferson*, 10th Dist. Franklin No. 12AP-238, 2014-Ohio-11 (finding that trial counsel rendered effective assistance by reducing the defendant's risk of a life sentence to a sentence of a fixed number of years); *see also State v. Davidson*, 6th Dist. Lucas No. L-09-1194, 2010-Ohio-3928 (concluding that the negotiation of a plea agreement that

12.

reduced the defendant's maximum potential sentence from eight years to five years did not constitute ineffective assistance of counsel).  Accordingly, appellant's second assignment of error is not well-taken.

### III.  Conclusion

**{¶ 29}** The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.  The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.         _____
                                          JUDGE
Arlene Singer, J.         

Stephen A. Yarbrough, P.J.     _____
CONCUR.                                    JUDGE

_____
                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.