[Cite as *McFarren v. Emeritus at Canton*, 2018-Ohio-1593.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WANDA L. MCFARREN, INDIVIDUALLY AND AS ADMINISTRATRIX FOR THE ESTATE OF ANGELINE B. RINKER, DECEASED | : : : : | JUDGES: Hon. John W. Wise, P.J. Hon. Craig R. Baldwin, J. Hon. Earle E. Wise, J. |
| Plaintiff-Appellant -vs- | : : : : | |
| EMERITUS AT CANTON, ET AL | : : | Case No. 2017CA00130 |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No.2012CV02236


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                April 20, 2018


APPEARANCES:

For Plaintiff-Appellant                For Defendants-Appellees

LEE E. PLAKAS                          KEITH HANSBROUGH
MEGAN J. FRANTZ OLDHAM                  127 Public Square
COLLIN S. WISE                         Suite 3510
220 Market Avenue South 8th Floor      Cleveland, OH  44114
Canton, OH  44702

*Wise, E. J.*

{¶ 1}   Plaintiff-Appellant Wanda L. McFarren, individually and as Administratrix for the Estate of Angeline B. Rinker, deceased, appeals the June 30, 2017 judgment entry of the Stark County Court of Common Pleas granting summary judgment to Defendants-Appellees Emeritus at Canton, et al.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   This matter returns to us following our reversal and remand pertaining to McFarren's contract claims in *McFarren v. Emeritus at Canton et. al*, 5th Dist. Stark No. 2015CA00052, 2016-Ohio-484, herein "*McFarren I*."  Facts relevant to this appeal are as follow:

{¶ 3}   In July, 2010, 91-year old Angeline B. Rinker and her family sought a temporary care provider for Mrs. Rinker while Mrs. Rinker's usual caretaker was unavailable. It was decided that Mrs. Rinker should stay at The Landing of Canton for a short-term period from July 8, 2010 to July 15, 2010.

{¶ 4}    Defendant-Appellee The Landing of Canton is a licensed residential care facility which provides assisted living, memory care, and respite/short-term stay care. Defendant-Appellee Emeritus of Canton operates The Landing of Canton. For ease of discussion, The Landing of Canton and Emeritus of Canton will be referred to as "Emeritus."

{¶ 5}   On July 8, 2010, Mrs. Rinker and a family member signed a Respite/Short Term Stay Addendum to Resident Agreement with Emeritus. The Respite/Short Term Stay Addendum stated in Paragraph 4, "[p]rovided that we agree and have space available at the Community, you may extend this Respite Period by executing a new

Respite Addendum or you may convert to a regular residency by executing a standard Resident Agreement."

{¶ 6}   The same day, at the request of Emeritus, Mrs. Rinker's personal physician, Dr. Thomas, completed a health assessment of Mrs. Rinker. The health assessment form asked for Mrs. Rinker's health history and physical. As to "Ambulatory Status," Dr. Thomas wrote in "re-evaluate." Dr. Thomas checked the box for "Assist with transfer: One person." The health assessment form also asked for the "Type of Care or Services Resident Requires." Dr. Thomas wrote in "Nursing Home" for "Type." He also wrote, "Duration: Indefinite."

{¶ 7}   Mrs. Rinker's original respite stay agreement terminated on July 15, 2010, but Mrs. Rinker's family determined they needed more time. On July 14, 2010, Plaintiff-Appellant Wanda L. McFarren signed a Resident Agreement with Emeritus to convert Mrs. Rinker's short-term stay to a regular residency. Mrs. Rinker's term of residency was month-to-month.

{¶ 8}   On July 15, 2010 at approximately 6:40 p.m., a Resident Assistant found Mrs. Rinker in her room, lying on the floor beside her bed. The Resident Assistant notified Shawn Meek, the LPN on duty. A portable x-ray company was called and it was determined at 11:45 p.m. that Mrs. Rinker fractured her left hip. Mrs. Rinker was transported to Mercy Medical Center.

{¶ 9}   Mrs. Rinker stayed at Mercy Medical Center until July 21, 2010. She was then transferred to the Canton Regency. That evening, Mrs. Rinker passed away.

{¶ 10} The death certificate certified by the Stark County Coroner stated the immediate cause of death was complications of a left hip fracture. The coroner listed the condition leading to the immediate cause of death as, "Fall."

{¶ 11} On July 13, 2012, Plaintiff-Appellant Wanda L. McFarren, Individually and as Administratrix for the Estate of Angeline B. Rinker, Deceased, filed a complaint in the Stark County Court of Common Pleas. In the complaint, she named Emeritus of Canton, Emeritus Corporation, The Landing of Canton, and others who are no longer parties to this matter, as defendants. McFarren filed an amended complaint on March 10, 2014 asserting six causes of action.

{¶ 12} In Count One, McFarren set forth a claim for negligence. McFarren alleged the defendants were negligent in admitting and retaining Mrs. Rinker as a resident based upon the argument that Mrs. Rinker required a higher level of care than the defendants could provide.

{¶ 13} In Count Two, McFarren claimed the defendants violated the Ohio Patients' Bill of Rights under R.C. 3721.13(A)(30).

{¶ 14} In Counts Three and Four, McFarren argued the defendants breached the terms of the Resident Agreement and the Care Agreement.

{¶ 15} In Count Five, McFarren claimed the defendants caused the wrongful death of Mrs. Rinker by their failure to meet the standard of care in failing to properly supervise, attend, and assist Mrs. Rinker and failing to implement fall risk interventions.

{¶ 16} In Count Six, McFarren set forth a claim for punitive damages.

{¶ 17} On October 27, 2014, Appellees Emeritus filed a motion for summary judgment. On the same date, McFarren filed a motion for summary judgment as to cause of death.

{¶ 18} On March 3, 2015, the trial court granted the motion for summary judgment of Emeritus. The court further determined the claims raised by McFarren were medical claims, and therefore time-barred by the one-year statute of limitations under R.C. 2305.113. As to McFarren's wrongful death claim, the trial court found that McFarren failed to establish through expert testimony that there were genuine issues of material fact demonstrating Emeritus deviated from the standard of care and that deviation proximately caused Mrs. Rinker's fall on July 15, 2010. The court thus further found an issue challenging the cause of Mrs. Rinker's death as set forth on the certificate certified by the Stark County Coroner was moot. Finally, the trial court also denied McFarren's claim for punitive damages.

{¶ 19} McFarren appealed to this court raising five assignments of error, specifically: 1) that a genuine issue of material fact existed as to causation because McFarren had introduced evidence to demonstrate Emeritus breached the standard of care; 2) McFarren's claims of negligence, violation of Ohio's Patient Bill of Rights, and breach of contract for personal injury were not medical claims when the negligence actors did not provide any professional skill; 3) The trial court erred in grating summary judgment on punitive damages claim when the evidence demonstrated Emeritus had knowledge Mrs. Rinker required a higher level of care than Emeritus could provide, and despite that knowledge admitted and retained Mrs. Rinker; 4) The trial court erred in finding an affidavit executed by Mrs. Rinker's grandson was hearsay because it rebutted testimony of

Emeritus employees and Emeritus's expert's testimony; and 5) McFarren's motion for summary judgment on causation should have been granted as there is no genuine dispute that Mrs. Rinker's fall caused her death.

{¶ 20} We affirmed in part, and reversed and remanded in part. Specifically, we found McFarren's breach of contract claims were not medical claims, and therefore were not brought outside the statute of limitations as previously found by the trial court. We thus remanded the breach of contract claims, counts three and four of McFarren's first amended complaint, for consideration on the merits. We further remanded the matter of cause of death for the trial court's decision. We found McFarren's remaining arguments without merit.

{¶ 21} McFarren attempted an appeal to the Supreme Court of Ohio. On October 26, 2016, the Court declined jurisdiction. *State v. McFarren*, 147 Ohio St.3d 1413, 2016 Ohio-7455, 62 N.E.3d 185.

{¶ 22} On remand, Emeritus filed a motion for summary judgment as to the remaining contract claims and McFarren filed a brief in opposition. After considering McFarren's breach of contract complaint on the merits, the trial court found McFarren had failed to produce any evidence to show Emeritus had violated any terms of the Resident Agreement or the Care Agreement. On the issue of the cause of Mrs. Rinker's death, the trial court found no evidence had been presented to rebut the presumption contained in the Coroner's report.

{¶ 23} McFarren subsequently filed this appeal, raising three assignments of error:

I

{¶ 24} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MCFARREN'S BREACH OF CONTRACT CLAIMS WHERE THIS COURT PREVIOUSLY REMANDED MCFARREN'S BREACH OF CONTRACT CLAIMS TO THE TRIAL COURT FOR FURTHER PROCEEDINGS DESPITE THIS COURT'S RULINGS WITH RESPECT TO MCFARREN'S NEGLIGENCE AND WRONGFUL DEATH CLAIMS PREMISED ON THE SAME UNDERLYING FACTS."

II

{¶ 25} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MCFARREN'S BREACH OF CONTRACT CLAIMS WHERE THE TRIAL COURT APPLIED THE STANDARD FOR BREACH UNDER COMMON LAW NEGLIGENCE RATHER THAN THE STANDARDS SET FORTH IN THE CONTRACT, FAILED TO CONSIDER RELEVANT LANGUAGE AND PROVISIONS IN THE CONTRACT, EXCUSED EMERITUS' BREACH DUE TO ITS ALLEGED ALTRUISTIC MOTIVE, AND BLAMED MRS. RINKER'S FAMILY FOR EXECUTING THE AGREEMENT TO READMIT HER."

III

{¶ 26} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MCFARREN'S BREACH OF CONTRACT CLAIMS WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED REGARDING WHETHER EMERITUS BREACHED THE CONTRACT, PROXIMATELY CAUSING DAMAGES.

I

{¶ 27} In her first assignment of error, McFarren argues the trial court violated law of the case doctrine when on remand and on the same record, it again granted summary judgment to Emeritus. According to McFarren, we remanded the breach of contract claims for trial. McFarren's argument is based on a misreading of *McFarren* I.

{¶ 28} In *McFarren* I, the trial court had not addressed McFarren's breach of contract claims at all because it found them to be medical claims which were raised outside the statute of limitations. We reversed, finding the claims were not medical claims and remanded for further proceedings based on that opinion. *McFarren v. Canton*, 5th Dist. Stark No. 2015CA00052, 2016-Ohio-484 ¶ 51. The trial court proceeded properly on remand by considering the breach of contract claims on the merits.

{¶ 29} The first assignment of error is overruled.

II, III

{¶ 30} In her second and third assignments of error, McFarren argues the trial court erred in granting summary judgment to Emeritus on her breach of contract claims. Specifically McFarren argues that on remand, the trial court applied the wrong standard in evaluating her breach of contract claims, failed to consider relevant language and provisions in the contract, excused Emeritus' breach for alleged altruistic motive, and blamed Mrs. Rinkner's family for executing the agreement to readmit her. Additionally, McFarren argues the trial court improperly applied our findings in *McFarren* I, with regard to the standard of care for negligence, to McFarren's breach of contract claims. We disagree.

{¶ 31} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 32} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 33} As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 34} In order to state a valid claim for breach of contract, it was incumbent upon McFarren to establish: (1) the existence of a contract; (2) performance by McFarren; (3) breach by Emeritus; and (4) damage as a result. *Blake Homes, Ltd. v. First Energy Corp.*, 173 Ohio App.3d 230, 2007-Ohio-4606, 877 N.E.2d 104 (6th Dist).

### McFarren's Contract Claims

{¶ 35} In Count Three of her First Amended Complaint, McFarren alleged Emeritus breached paragraph nine of the Resident Agreement titled "Transfer to More Appropriate Care" and "other provisions." McFarren alleged Emeritus breached the contract by admitting and retaining Mrs. Rinker as a resident, and failing to transfer Mrs. Rinker "despite the fact that Dr. Joseph P. Thomas ordered that 1) Mrs. Rinker required a nursing home and 2) her needs could not be met in an assisted living community," and Mrs. Rinker suffered injury as a direct and proximate result. As the case proceeded below, McFarren's complaint evolved to include an accusation that Emeritus failed to advise Mrs. Rinker's family of Dr. Thomas' assessment.

{¶ 36} In Count Four of her First Amended Complaint, McFarren alleged Emeritus breached the Care Agreement by failing to provide the care and services to Mrs. Rinker that they agreed to provide, and Mrs. Rinker suffered injury as a direct and proximate result.

### Contract Provisions

{¶ 37} The introduction of the Resident Agreement states the purpose of the Agreement "* * * is to provide a statement of the services that will be furnished to you,

and other legal obligations that we will assume. This Agreement also sets forth your legal obligations, both financial and non-financial." The introduction of the Agreement further states:

> Please note that as a residential care facility, we encourage our residents to exercise independence and to participate in physical activities to the extent of their capabilities. Because of this, there are risks inherent to living in our Community that are similar to the risks associated with independent living, since our Community does not provide one-on-one, 24 hour nursing care. This includes the risk that falls and other personal injuries may occur from time to time.

{¶ 38} The Resident Agreement states the limits of its services:

### Transfer for more Appropriate Care

The Community is licensed as a residential care facility, and is not designed to provide higher levels of care, such as 24 hour skilled nursing or care for mental or emotional disorders. You may remain in your Apartment as long as doing so is conducive to your safety and well-being, the safety and wellbeing of the other residents at the Community, and applicable legal requirements. If we determine, in consultation with you, your family and/or your physician, that you are unable to remain in your Apartment consistent with these requirements, you will be asked to move from the Community

and this Agreement will terminate. If you do not move out under these circumstances, and we determine that it is necessary to provide you with one-on-one care in order to protect your health or safety or the health or safety of others, we will provide such care and you will be charged for it in accordance with Appendix B.

{¶ 39} The Resident Agreement also outlines the level of Personal Care Services (the "Care Agreement") the resident will be provided, depending on the resident's needs. The Agreement states that prior to admission to the Community, the staff performed a comprehensive Resident Evaluation of the resident's needs. The Evaluation is titled, "Emeritus Resident Baseline & Data Set." Based on the Emeritus Resident Baseline & Data Set, Emeritus ranks the resident's needs by different levels of care. The Resident Evaluation of Mrs. Rinker was completed by Emeritus on July 9, 2010. Relevant to this appeal, the Emeritus Resident Baseline & Data Set describes Mrs. Rinker's level of care:

* * *

1c. Mental Behavioral Status

* * *

Resident has periods of confusion/forgetfulness. Landing of Canton will be responsible.

Resident requires safety check every shift. This applies, but not limited to a resident at risk for wandering. Landing of Canton will be responsible.

Requires daily safety checks (not related to fall history) Landing of Canton will be responsible.

2a. Mobility/Ambulation/Modes of Locomotion

Requires assistance for mobility to and from meals, activities, beauty shop, and/or common areas. Landing of Canton will be responsible.

* * *

2a. Gait/Balance

Resident has been identified to have an unsteady gait, monitor for safety, Ambulation and Mobility Evaluation completed. Landing of Canton will be responsible.

* * *

**Acknowledgement and Acceptance Agreement**

This document reflects the agreement of the parties regarding the needs of the Resident, regarding who will be responsible for providing the services to fill those needs, and regarding payment for services to be provided by Facility. The parties enter into this agreement for services to be provided to Resident by Facility or to be provided by Resident for himself or herself. * * * Resident understands and acknowledges that independently providing for services can entail risks, including, without limitation, serious health risks. Resident agrees to release and hold Facility harmless against any claims, demands, damages, liability or obligation of whatsoever nature arising out of or relating in any way to injuries, damages or harm suffered by reason of Resident's decision to provide for the identified needs either by Resident or

indirectly by arrangements with anyone other than Facility. THIS IS A RELEASE! READ AND UNDERSTAND BEFORE SIGNING.

\* \* \*

**Decision to Admit and Retain Mrs. Rinker**

{¶ 40} McFarren's argument hinges on the health assessment of Dr. Thomas which was completed on July 8, 2010, the day Mrs. Rinker was admitted to Emeritus. McFarren interprets the two-word recommendation of "nursing home" to mean that Emeritus was an inappropriate placement for Mrs. Rinker, and argues Emeritus' decision to admit, and then readmit Mrs. Rinker against Dr. Thomas's recommendation for a higher level of care was a breach of the Resident Agreement and the direct and proximate cause of her fall.

{¶ 41} In *McFarren* I at ¶ 59-61 we addressed this argument as it pertained to the duty of care for McFarren's negligence claim and found the following:

McFarren argues that Emeritus breached the standard of care when it admitted and retained Mrs. Rinker against the direction of Mrs. Rinker's personal physician, Dr. Thomas. On July 8, 2010, Mrs. Rinker's personal physician, Dr. Thomas, completed a health assessment of Mrs. Rinker. The health assessment was done at the request of Emeritus.

The health assessment form asked for Mrs. Rinker's health history and physical. As to "Ambulatory Status," Dr. Thomas wrote in "re-evaluate." Dr. Thomas checked the box for "Assist with transfer: One person." The health assessment form also asked for the "Type of Care or Services Resident

Requires." Dr. Thomas wrote in "Nursing Home" for "Type." He also wrote, "Duration: Indefinite."

McFarren argues Dr. Thomas stated that Mrs. Rinker should be placed in a nursing home for the type of care or services the resident required. Emeritus knew this, but admitted and retained Mrs. Rinker. The evidence in this case is that it was the decision of Mrs. Rinker and her family to reside at Emeritus. There is no Civ.R. 56 evidence that Mrs. Rinker or her family consulted with Dr. Thomas before her admission or after her admission. Further, McFarren did not provide the deposition or affidavit of Dr. Thomas to discern what he meant by "nursing home." The term "nursing home" has a statutory definition, but it can be generally used to describe different levels of care. Emeritus is a residential facility that provides assisted living. An assisted living facility is not the same as a skilled nursing facility. A memory care unit is not the same as an assisted living facility or a skilled nursing facility. McFarren heavily relies upon the "nursing home" statement by Dr. Thomas on the health assessment form, but without a deposition or affidavit from Dr. Thomas as to his statement as to the level of care he felt Mrs. Rinker needed, [McFarren's] expert's interpretation of Dr. Thomas's statement is pure speculation.

{¶ 42} In rejecting McFarren's negligence argument, we found reasonable minds could conclude there was no breach of the standard of care to admit and

retain Mrs. Rinker at Emeritus based on the assessment of Dr. Thomas. *McFarren I* ¶ 62.

{¶ 43} Likewise here, on the same record, we cannot say, absent an affidavit or deposition from Dr. Thomas, that this two-word assessment was a prescription for a higher level of care. Contrary to McFarren's argument, Dr. Thomas' assessment did not unequivocally determine Mrs. Rinker's needs could not be met at Emeritus as there is no evidence on this record as to what the doctor meant by term "nursing home."

{¶ 44} Further, there is evidence on the record that Emeritus was capable of meeting Mrs. Rinker's needs and that a skilled nursing facility, or "nursing home" was not necessary to meet Mrs. Rinker's needs. Volmacka deposition December 17, 2012, 150, Fifield deposition, January 22, 2013 38-39. But even if Mrs. Rinker had required skilled nursing, as the trial court found, in Ohio, a residential care facility may admit or retain individuals who require skilled nursing care for up to 120 days. O.A.C 3701-17-59.1[1] states:

> Except as provided in division (D) of this section, a residential care facility may admit or retain individuals who require skilled nursing care beyond the supervision of special diets, application of dressings, or administration of medication, only if the care will be provided on a part-time, intermittent basis for not more than a total of one hundred twenty days in any twelve-month period. In accordance with Chapter 119. of the Revised Code, the director

---

[1] Repealed March 1, 2018. The language of O.A.C 3701-17-59.1 in mirrored, however in R.C. 3721.011(C) effective September 29, 2013.

of health shall adopt rules specifying what constitutes the need for skilled nursing care on a part-time, intermittent basis. The director shall adopt rules that are consistent with rules pertaining to home health care adopted by the medicaid director for the medicaid program. Skilled nursing care provided pursuant to this division may be provided by a home health agency certified for participation in the medicare program, a hospice care program licensed under Chapter 3712. of the Revised Code, or a member of the staff of a residential care facility who is qualified to perform skilled nursing care.

{¶ 45} Mrs. Rinker was a resident of Emeritus for less than 120 days. She resided there first as a respite care case when her usual caretaker was unavailable, and then was readmitted when her family needed more time. *McFarren* I, ¶ 61, Vomaka deposition, December 17, 2012, 67-68, 120, 152-153, 171-172, Fifield deposition, January 22, 2013, 46-47, Willis deposition December 21, 2012, 53. Mrs. Rinker's placement and retention thus met "applicable legal requirements."

{¶ 46} Further, the Transfer to More Appropriate Care provision does not indicate that a transfer hinges upon a physician's recommendation, nor that Emeritus is required to share a physician's recommendation with the family. Rather, it indicates this is a determination made after "consultation with you, your family *and/or* your physician." [Emphasis added.] Nothing in this section, or any other section of the contract indicates Emertius was obligated to transfer Mrs. Rinker based on Dr. Thomas's assessment alone. Even if Emeritus "should" have shared this information with Mrs. Rinker's family as McFerren argues, it was not contractually bound to do so. The evidence in the record is

that placement is ultimately the decision of the family. Rinker's family did not want to place her in a "nursing home," and it was the decision of Mrs. Rinker's family that she reside at Emeritus. Vomacka deposition, December 17, 2012, 120.

{¶ 47} As for McFarren's allegation that Emeritus breached the Care Agreement, as noted by the trial court, McFarren produced no evidence to show Emeritus failed to provide any services it promised to deliver.

{¶ 48} Next, although McFarren argues here that the trial court improperly excused Emeritus' conduct based on altruistic motive, i.e, "to help Mrs. Rinker's family," it appears McFarren acknowledged that Mrs. Rinker's readmission was indeed to help the family as they needed more time. Plaintiff's Opposition Brief, November 13, 2014, at 1, incorporated to the Opposition Brief filed March 13, 2017.

{¶ 49} Although McFerren strenuously argues that other sections of the Resident Agreement indicate Emeritus had a contractual obligation to regularly and accurately evaluate Mrs. Rinker to determine if her needs could be met at the facility, and did not do so, the record indicates otherwise. The resident agreement gives no indication whatsoever as to what intervals reevaluations should occur. Depositions however, indicate that evaluations take place upon admission, and then once a month thereafter. Vomacka deposition, December 17, 2012 at 134, Fifield deposition, January 22, 2013 at 105. Mrs. Rinker was a resident at Emeritus for only 7 days and was evaluated upon admission. Meek deposition, November 29, 2012, 31-50.

{¶ 50} Even if McFarren had demonstrated a breach of either the Resident Agreement or the Care agreement, she still has failed to establish a nexus between any breach and Mrs. Rinker's fall. As we found in *McFarren* I at ¶ 82:

* * *There is no evidence in the record to establish a genuine issue of material fact as to how Mrs. Rinker fell. The Civ.R. 56 evidence shows that no one on staff at Emeritus recalls Mrs. Rinker in her room before the fall. There is no evidence whether Mrs. Rinker was in her bed or in her wheelchair before she was discovered on the floor of her room at 6:40 p.m. There is no Civ.R. 56 evidence whether Mrs. Rinker wore an emergency pendant to alert someone if she fell or even if she was wearing the pendant, or that Mrs. Rinker knew to use the device. McFarren's expert opines different fall preventions that Emeritus should have had in place to prevent Mrs. Rinker's fall, but in this case, there is no knowledge as to how Mrs. Rinker fell. As the trial court determined, it is speculation on part of McFarren's expert to state that if Emeritus had more precautions been in place, Mrs. Rinker would not have fallen.

{¶ 51} The evidence here remains the same. We therefore find McFarren has not provided Civ.R. 56 evidence to create a genuine issue of material fact to show Emeritus breached any portion of the Resident Agreement or the Care Agreement, nor a nexus between any breach and injury.

{¶ 52} Finally, McFarren also argues the trial court failed to consider the Resident Agreement as a whole, analyzing only those provisions set forth in McFarren's First Amended Complaint. Although the trial court did not specifically discuss the additional contract provisions raised in McFarren's response to

Emeritus' Motion for Summary Judgement, it did find no breach as set forth in counts three and four of McFarren's First Amended Complaint which pled breach of specific "and other provisions" of the contract. We cannot say, therefore that the trial court failed to consider the entire contract.

{¶ 53} The second and third assignments of error are overruled.

{¶ 54} The judgment of the Stark County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Baldwin, J. concur.

EEW/rw